In the Matter of Cornelius W. McDougald, an Attorney, Respondent.

First Department, December 14, 1934.

*S. C. Lewis* of counsel [*Einar Chrystie*, attorney], for the petitioner.

*Aiken A. Pope*, for the respondent.

Finch, P. J. This is a disciplinary proceeding instituted against the respondent who was admitted to practice as an attorney and counselor at law on December 14, 1908, at a term of the Appellate Division of the Supreme Court, First Department.

The facts generally are not in dispute. In brief, the respondent obtained two small loans of $100 and $250, apparently from a money lender secretly engaged in this business. The loans apparently were made also, one, through an individual intermediary, Henry G. Bragg, and, another, through a corporate intermediary, Guiana Realty Corporation. The reasons for this are left to the imagination. In connection with the loan of the $100, respondent gave a promissory note to Bragg payable in one month, together with an assignment, as security, of a fee which respondent expected to receive as an allowance to be made for his services as special guardian. Bragg had previously borrowed the sum of $100 from Sherrill, the money lender, and, as security for the loan from Sherrill, Bragg indorsed to him the note of respondent and reassigned to Sherrill the assignment which Bragg had received from the respondent, and Bragg delivered both documents to Sherrill. A couple of months later the respondent collected the fee which in the meantime had been fixed by the court in the sum of $150. Respondent used this entire amount for his own purposes. Prior to the time of the collection of the fee, respondent had received notice of the transfer

of the note and assignment to Sherrill. The respondent failed to pay his note, although Sherrill duly demanded the payment of the note. Respondent finally paid after he had been advised that the matter was under investigation by the committee on grievances of petitioner.

In reference to the loan of $250, respondent gave a promissory note to the Guiana Realty Corporation payable one month thereafter and, as security therefor, assigned to the Guiana Realty Corporation all his right, title and interest to a certain award of $250 which the respondent was to receive as a fee for services to be rendered in the defense of a man charged with murder. About two weeks after the note became due, the respondent collected the award of $250 and used this amount for his own purposes, until after the note and the assignment had been placed in the hands of the attorney for the Guiana Realty Corporation for collection.

As a defense to his use of the fee of $100, respondent urges that the assignment was void as against public policy and asserts that he had the permission of his friend Bragg to use the money from this fee. In corroboration of this claim it appeared that Bragg had been accustomed to have dealings with the money lender Sherrill and apparently had taken the respondent to him at a time when the respondent was anxious to secure a loan. Respondent expected that if Bragg gave him permission, Bragg could probably likewise obtain permission from Sherrill. Bragg, on the other hand, did not corroborate the respondent in his testimony that Bragg gave him permission to use the money. Bragg was obviously friendly to the respondent but the utmost that Bragg would testify to was on cross-examination, after he had been called as a witness by the petitioner, when Bragg said that when respondent came to him and told him that he would like to use the money, Bragg told him that he would have to see Sherrill about it. Respondent further testified that he then went over to Sherrill, handed Sherill twenty-five dollars, and said: " Did Bragg mention this matter to you? He said, ' Well, that is all right, go ahead.' " Respondent then testified as follows: " I said I told Bragg that I wanted him to give me time on it, I regarded the matter between Bragg and me, and the letter comes, and Bragg seems to be taking the position that you are collecting the money for him, and Bragg is not too clear with me, that he wants you to collect the money and wants to hold himself in a position towards me that there could be no legal impediment on your collecting the money."

In regard to the note for $250, Sherrill was president of the Guiana Realty Corporation and apparently the corporation was entirely his creature. When this note fell due on or about July second, Sherrill telephoned the respondent. The respondent told

Sherrill that he had not yet collected the fee and it was agreed between them to extend the loan for another month, to August second. Sherrill in the meantime had discovered that the fee had been paid on or about July fifteenth and dunned the respondent on August fourth. The respondent's defense is that this assignment likewise was void as against public policy and also that he obtained permission from one Davis to use the fee and he relied on Davis to obtain the consent of Sherrill. In this respect respondent testified as follows: " When I learned that we were going to get the check, I went to Mr. Davis, instead of going to Sherrill. I said to Davis that he knew Sherrill, and he had standing with Sherrill, and he could handle the situation; and I had no objection to paying Sherrill for the accommodation of extending the note, and I would also like him to arrange with Sherrill if he said so, because Sherrill had told me that whatever Davis said would be all right, that I could use the money. Davis told me he would do so; and that was before I used the check. * * *

" The respondent: I think I have already testified, have I not, that I obtained the authority from Mr. Davis to use that money. If I did not, I want to put that on the record. I did some time around the 13th or 12th of the month, and those checks came in ——

" The Referee: What do you mean? You obtained the authority from Mr. Davis?

" The respondent: I went to Mr. Davis, and I told him I wanted him to see Sherrill, and I knew if he did and straightened it out with Sherrill, it would be all right, and I could use the money, and I would pay Sherrill."

Assuming that the contention of respondent, that both of these assignments were void, is correct, and that in consequence the respondent is not guilty of conversion, nevertheless, as held by the referee, the respondent, having agreed to make the payments out of these moneys, should not in honor have disbursed them without the approval of Sherrill.

While finding the respondent thus lacking in honor, the referee, however, urges the utmost clemency concerning the punishment of respondent for his lapse from the stainless honor which should characterize members of the legal profession. The learned referee in his report goes on to say: " The respondent is a colored man, graduated from Lincoln University with the degree of B.A. in 1904 and from New York University Law School with the degree of LL.B. in 1907. He was Deputy Assistant District Attorney of New York County for five years. He served as Special Deputy Attorney General to assist in the prosecution of stock frauds for a year; also he served as a member of the Decedent's Estate Commis-

sion appointed to make recommendations to the Legislature for revision of the Decedent's Estate Laws. He is fifty years of age, married and has two children; one a son, recently graduated from Lincoln University; and now a student in Fordham University Law School; the other child is a daughter, who was recently graduated from Hunter College. He has practiced law in this City since his admission to the Bar.

" On the other hand, his accuser, the complainant here, appeared to me as a hard and vindictive man. He has been several times convicted for violations of laws pertaining to the operation of employment agencies; his criminal record may be found in extenso at page 67 of the record of the proceedings before me. He also does business under the name of Guiana Realty Corporation, personally owned and controlled by himself."

There is no clear finding by the referee that the defense of the respondent to these charges was false, nor is the evidence sufficiently clear on this point to warrant disciplinary proceedings based on a false defense.

Upon this record the respondent should receive the censure of this court.

MARTIN, TOWNLEY and GLENNON, JJ., concur.

Respondent censured.